ELIZABETH A. McCLANAHAN, Judge.
Jack Edward Carter appeals his conviction for grand larceny and argues the evidence was insufficient to support his conviction. We disagree and affirm the judgment of the trial court.
I. STANDARD OF REVIEW
“On review of a challenge to its sufficiency, we view the evidence in the light most favorable to the Commonwealth, the party prevailing below, and grant to it all reasonable inferences fairly deducible therefrom.” Nolen v. Commonwealth, 53 Va.App. 593, 595, 673 S.E.2d 920, 921 (2009). “Sufficiency-of-the-evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilt beyond a reasonable doubt.” United States v. Powell, 469 U.S. 57, 67, 105 S.Ct. 471, 477-78, 83 L.Ed.2d 461 (1984). See also McMillan v. Commonwealth, 277 Va. 11, 19, 671 S.E.2d 396, 399 (2009); Jones v. Commonwealth, 277 Va. 171, 182, 670 S.E.2d 727, 734 (2009); Clanton v. Commonwealth, 53 Va.App. 561, 566, 673 S.E.2d 904, 906-07 (2009) (en banc).
II. BACKGROUND
Carter devised a plan to take paint from a display shelf in a Home Depot store, place it in a shopping cart, meet, Tracy Browning with the cart at the returns desk, have Browning represent that the paint had been previously purchased, and attempt to return it for a cash “refund.” In accordance with the plan, Carter entered the store and placed four five-gallon buckets of paint into a shopping cart. Browning, as instructed by Carter, met Carter at the returns desk and took the *704 shopping cart from Carter who then left the store and walked to a local restaurant. Browning attempted to return the paint for the retail value of $398.92 in cash but the assistant manager suspected a fraudulent return and alerted the loss prevention investigator who contacted police. The police arrested Browning[1] and later apprehended and arrested Carter. In a bench trial, Carter was convicted of grand larceny.
III. ANALYSIS
Carter contends the evidence was insufficient to support his conviction because the Commonwealth failed to prove he intended to steal the paint.
 Larceny is defined as the wrongful or fraudulent taking of personal property of some intrinsic value, belonging to another, “without his permission and with the intent to permanently deprive him of that property.” Stanley v. Webber, 260 Va. 90, 96, 531 S.E.2d 311, 315 (2000); see also Jones v. Commonwealth, 3 Va.App. 295, 300, 349 S.E.2d 414, 417-18 (1986). “ ‘The intent with which property is taken determines the offense.’ ” Overstreet v. Commonwealth, 17 Va.App. 234, 236, 435 S.E.2d 906, 907-08 (1993) (quoting Slater v. Commonwealth, 179 Va. 264, 267, 18 S.E.2d 909, 911 (1942)). “In determining intent, the factfinder may consider the conduct of the person involved and all the circumstances revealed by the evidence.” Welch v. Commonwealth, 15 Va.App. 518, 524, 425 S.E.2d 101, 105 (1992) (internal quotation marks and citation omitted).
Removal of property from an owner’s premises is not required.
To constitute the crime of simple larceny, there must have been a felonious taking of the property from the possession of the owner, and the thief must, for an instant at least, have had complete and absolute possession of the stolen property, and during such possession and control he must *705 have feloniously removed the same from the place it occupied just before he grasped, seized or laid hold of the same.
Jones, 3 Va.App. at 301, 349 S.E.2d at 418 (internal quotations and citation omitted). “Where the property has been feloniously taken, the slightest removal, even if it is only a hair’s breadth, with intent to steal the same, is sufficient to constitute the asportation.” Id. at 302, 349 S.E.2d at 418. “All that is required is that a defendant remove ‘the items from the locations in the store where they were displayed by the owner.’ ” Welch, 15 Va.App. at 524, 425 S.E.2d at 105.
Carter concedes the Commonwealth proved removal of the paint from the shelf, the placement of the paint in the shopping cart, and even asportation of the paint within the store. He argues, though, he did not intend to steal the paint but planned to return it upon receipt of a refund.[2] Although Browning testified she did not know what she would have done if Home Depot had refused to accept the return, we must presume the trial court resolved this factual question in favor of the Commonwealth, Jackson v. Virginia, 443 U.S. 307, 326, 99 S.Ct. 2781, 2792-93, 61 L.Ed.2d 560 (1979), and found the paint would have been kept by Carter and Browning to conceal their own wrongdoing.[3]
*706 “In Virginia, absent countervailing evidence of an intention otherwise, ‘the wrongful taking of the property in itself imports the animus furandi,’ ” or intent to steal. McEachern v. Commonwealth, 52 Va.App. 679, 685, 667 S.E.2d 343, 346 (2008.) (quoting Bryant v. Commonwealth, 248 Va. 179, 183, 445 S.E.2d 667, 670- (1994)). Thus, as the Commonwealth argues, “the very existence of.a trespassory taking permits the inference (unless other circumstances negate it) that the taker intended to steal the property.” . Id. Applying .the animus furandi inference, the trial court could properly infer Carter intended to steal the paint from his wrongful taking of the paint—he removed the paint from the display shelf and placed it in the cart without any intent to pay for it but with every intent to claim its ownership.[4]
Because the return of the paint was conditioned on Home Depot’s acceptance of the refund request and we presume the trial court found the paint would have been kept had Home. Depot refused the refund, removing the paint from the shelf, placing it in the cart, and representing the paint as having already been purchased created a substantial risk of perma *707 nent loss of the paint to Home Depot. ' “ ‘[A]n intent to deprive the owner of his property permanently, or an intent to deal with another’s property unlawfully in such a manner as to create an obviously unreasonable risk of permanent deprivation, [is] all that is required to constitute the animus furandi—or intent tó steal’ ” Black’s Law Dictionary 87 (7th ed.1999) (quoting Rollins M. Perkins & Ronald N. Boyce, Criminal Law 832-33 (3d ed.1982)). “What better proof can there be of [the intent to deprive the owner of his property], than the assertion of such a right of ownership by the [defendant] as to entitle him to sell it.” Regina v. Hall, 69 Eng. Rep. 291, 292 (1848). An offer to sell the property to its owner is one of the strongest acts of dominion and control over the property. Id.
Although an intent to return the property could ne- • gate the animus furandi inference,'“[t]he intent to return ... must be unconditional. Thus it is no defense to larceny that the taker intended to return it only if he should receive a reward for its return or only upon some other condition which he has no right to impose.” 3 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 19.5(b), at 90 (2d ed.2003). “For all practical purposes [an owner] has been permanently deprived of his property if he can get it back only by paying the full value thereof.” Rollins M. Perkins, Criminal Law 269 (2d ed.1969). Carter’s stated intent to return the paint was entirely contingent upon Home Depot’s payment of the full value of the paint, a condition Carter had no right to impose. Therefore, we agree with the Commonwealth that Carter’s intent “to ‘sell’ it back to the owner under fraudulent circumstances” did “not negate his intent to steal the paint at the time of the taking.”
The intent to return, conditioned on a future event that may or may not occur and based on a false assertion of ownership, should be disregarded as a matter of law and, as such, cannot negate the inference of intent to steal.[5] As the *708 Commonwealth asserted in the trial court, “the larceny was committed as soon as [Carter took] possession of the property with the intent to steal.” See, e.g., Jones, 3 Va.App. at 302, 349 S.E.2d at 418 (where, after the close of business, defendant moved items from their display locations but did not leave the store, the act of “larceny was accomplished when [he] removed the items from the locations in the store where they were displayed by the owner”); see also Welch, 15 Va.App. at 525 n. 4, 425 S.E.2d at 106 n. 4 (“the larceny was complete when Welch moved the televisions from the display shelf with the intent to steal” despite the fact he was found in an area on store premises open to the public for selection of items for purchase).[6]
*709 We find the evidence supports the rationality of the trial court’s finding that Carter intended to steal the paint. Accordingly, we affirm the judgment of the trial court.[7]

Affirmed.

. Browning pled guilty to grand larceny.

. Only "when an individual harbors the requisite intent to steal and permanently deprive the owner of property, acts on such intent by taking possession of the property even for an instant, and moves the targeted property, [has] larceny [] been committed.” Welch, 15 Va.App. at 522, 425 S.E.2d at 104 (emphasis added). The intent to temporarily deprive the owner of possession of property is insufficient to prove the intent to steal the property. See Tarpley v. Commonwealth, 261 Va. 251, 256-57, 542 S.E.2d 761, 763-64 (2001).

. The dissent’s statement that the trial court did not expressly find Carter and Browning were going to return the paint only if they received the refund ignores the standard of review requiring that we view the evidence in the light most favorable to the Commonwealth. See Nolen, 53 Va.App. at 595, 673 S.E.2d at 921. There was no evidence tending to show an intent to return the paint if a refund was not paid, and we must presume the trial court resolved any conflicting inferences regarding the intent to return the paint in favor of the Commonwealth “ ‘even if it does not affirmatively appear in the record.' " Harper v. Commonwealth, 49 Va.App. 517, 523, 642 S.E.2d 779, *706 782 (2007) (quoting Jackson, 443 U.S. at 326, 99 S.Ct. at 2793). In fact, if the Home Depot sales clerk had refused to pay the refund, it is unreasonable to conclude that Carter and Browning would have said “Okay, well, you keep the paint” or “run the risk of confirming the suspicions of the sales clerk or store security personnel by putting the [paint] back in the display.” People v. Davis, 19 Cal.4th 301, 79 Cal.Rptr.2d 295, 965 P.2d 1165, 1175 (1998) (court discussing numerous cases in which "a defendant, rebuffed in ah attempt to 'return' an item taken from a display in the same store, simply took the item with him'when he left the store” to avoid drawing attention to the theft).

. Although a‘ store owner generally consents to the public entering, viewing, and carrying around merchandise “for the limited purpose of purchase, or to otherwise engage in a lawful activity thereon,” it is not the owner's will “that entrance be made to defraud or steal from him.” Jones, 3 Va.App. at 300, 349 S.E.2d at 417 (where defendant remained in a store after its closing and removed items from their display locations, owner’s consent did not extend to remaining in the store after the close of business). Similarly, common sense dictates that Home Depot’s consent to the public removing and carrying around merchandise for the purpose of purchase did not extend to the removal of paint by Carter for the purpose of claiming it to be his own to seek a refund based on this false assertion.

. Because the claim of ownership evidences an intent to permanently deprive the owner of its property and the return is conditioned on the *708 owner's acceptance thereby creating a substantial risk of permanent loss, the Supreme Court of California has also concluded "a defendant who takes an item from a store display with the intent to claim its ownership and restore it only on condition that the store pay him a 'refund' must be deemed to intend to permanently deprive the store of the item within the meaning of the law of larceny.” Davis, 79 Cal.Rptr.2d 295, 965 P.2d at 1175. See also State v. Hauptmann, 115 N.J.L. 412, 180 A. 809 (1935) (where defendant kidnapped Lindbergh baby in its nightdress, court upheld conviction of murder in the commission of larceny since it was larceny to take the nightdress with the intent to return it only on condition of advancement of negotiations); Slaughter et al. v. The State, 113 Ga. 284, 38 S.E. 854 (1901) (court affirmed conviction for larceny and rejected defendants' argument that they did not intend to permanently deprive owner of property where defendants took owner's property and returned it to claim an award); Berry v. State, 31 Ohio St. 219 (1877) (where horses were taken from owner’s stable for the purpose of obtaining a reward for their return, court affirmed larceny conviction rejecting defendant's contention his intent was to deprive owner only temporarily of the horses); Commonwealth v. Mason, 105 Mass. 163 (1870) (court affirmed larceny conviction where defendant intended to take owner's horse, conceal it until owner offered a reward, and then claim the award).

. Because there was no intent to pay for the paint, Carter took possession of the paint—not bare custody as contended by the dissent. (By attempting to return the paint, Carter took not only possession, but claimed ownership of the paint.) "Where there is evidence that an individual has acted in a manner that is inconsistent with that of a prospective purchaser, and has exercised immediate dominion and control over the property, despite his continued presence within the owner's store, such conduct establishes sufficient possession to satisfy [the asportation] element of larceny.” Welch, 15 Va.App. at 523-24, *709 425 S.E.2d at 105. It should be noted, as well, Carter does not contest the asportation element of larceny, rather he argues his intent to return the paint upon receipt of a refund negates his intent to steal.

. The Commonwealth argued on appeal that it is sufficient if Carter intended to steal the "value” of the paint, an argument we reject since "an intangible cannot be the subject of larceny.” Bruhn v. Commonwealth, 35 Va.App. 339, 344, 544 S.E.2d 895, 897 (2001), aff'd, 264 Va. 597, 570 S.E.2d 866 (2002). Nevertheless, the Commonwealth argued in the trial court that the larceny was committed through the act of taking the paint from the shelf and then attempting to return it. The larceny was thus committed as soon as Carter took possession of the paint with the intent to steal it. Furthermore, the Commonwealth also argued on appeal that we could infer the intent to steal the paint by applying the animus furandi inference and that the intent to return it under fraudulent circumstances should not negate the intent to steal. Cf. Whitehead v. Commonwealth, 278 Va. 105, 677 S.E.2d 265 (2009) (where the rationale rejected by the Virginia Supreme Court was not argued in either the trial court or the Court of Appeals).