PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

v.

ELAINE ROBERTSON CIONI,

        *Defendant-Appellant.*

———

ELECTRONIC FRONTIER FOUNDATION;
NATIONAL ASSOCIATION OF CRIMINAL
DEFENSE LAWYERS,

        *Amici Supporting Appellant.*

No. 09-4321

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(1:08-cr-00239-GBL-1)

Argued: January 28, 2011

Decided: April 20, 2011

Before NIEMEYER, KING, and GREGORY,
Circuit Judges.

———

Affirmed in part, vacated in part, and remanded for further
proceedings by published opinion. Judge Niemeyer wrote the
opinion, in which Judge King and Judge Gregory joined.

**COUNSEL**

**ARGUED:** Jenifer Wicks, Washington, D.C., for Appellant. Jay V. Prabhu, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Josh Goldfoot, Senior Counsel, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Neil H. MacBride, United States Attorney, Alexandria, Virginia, for Appellee. Thomas K. Maher, NORTH CAROLINA OFFICE OF INDIGENT SERVICES, Durham, North Carolina; Lee Tien, Jennifer Stisa Granick, Marcia Hofmann, ELEC-TRONIC FRONTIER FOUNDATION, San Francisco, California, for Amici Supporting Appellant.

**OPINION**

NIEMEYER, Circuit Judge:

Elaine Cioni was convicted of five electronic communications offenses. In Count 1, she was convicted of conspiracy to commit the offenses charged in the remaining four counts and other related electronic communications offenses, in violation of 18 U.S.C. § 371. In Counts 2 and 4, she was convicted of obtaining information through unauthorized access to computers, in violation of 18 U.S.C. § 1030(a)(2)(C). Her convictions on Counts 2 and 4 also included charges of committing the offenses "in furtherance of" a violation of 18 U.S.C. § 2701(a) (obtaining access to communications in electronic storage), thus elevating her convictions on those counts from misdemeanors to felonies. In Count 5, she was convicted of making harassing telephone calls, in violation of 47 U.S.C. § 223(a)(1)(C). And in Count 6 she was convicted of obtaining access to communications in electronic storage, in violation of 18 U.S.C. § 2701. Again in this count, her conviction included charges of committing the offense "in furtherance of" a violation of 47 U.S.C. § 223(a)(1)(C) (making harassing

telephone calls), thus elevating her conviction from a misdemeanor to a felony. The government dismissed Count 3 before trial.

The district court sentenced Cioni to a 15-month term of imprisonment, followed by 2 years of supervised release.

Cioni challenges her convictions and sentence on numerous grounds. As we more fully explain in our opinion, with respect to Counts 2 and 4, we agree with Cioni that the offenses were improperly elevated from misdemeanors to felonies, and we vacate the convictions on those two counts and remand for entry of misdemeanor convictions. In view of that conclusion, we also vacate Cioni's sentence and remand for resentencing. With respect to her other challenges, we affirm the judgment of the district court.

I

Beginning in the summer of 2005, Cioni began having an affair with Bruce Enger, her former supervisor at Long & Foster Realty in Northern Virginia. Both Cioni and Enger were married at the time. During the affair, which continued for approximately two years, Cioni suspected that she was not the only one with whom Enger was having an affair. Nonetheless, after Cioni relocated to the Chattanooga, Tennessee area to take a new job and after the affair ended, Cioni and Enger remained on speaking terms, and occasionally communicated by telephone or e-mail.

Beginning in March 2007, however, Cioni began an anonymous electronic campaign of harassment against Enger, that lasted more than a year and that was uncovered only after an extensive investigation.

Initially, Enger started receiving harassing telephone calls from an unknown source. The calls were made to several of Enger's telephone numbers, including those of his office,

mobile telephone, his wife Maureen's telephone, and the telephones of several of his business associates. In each case, the person making the call spoke in a distorted male voice and revealed private information regarding Enger's work and personal life. For example, on August 24, 2007, the unidentified person called Enger on his Blackberry and said, "I know where you are . . . [be]cause I'm there too. I followed you." At other times, the caller recited the contents of Enger's password protected e-mail accounts and told Enger that "we're watching every move you make" and that copies of damaging e-mails would be sent to Enger's family while he was travelling. Occasionally the calls also made threats toward Enger, telling him, for example, that he "need[ed] to get on out of Dodge." Caller identification indicated that the calls originated from telephone numbers familiar to Enger, such as his home telephone number or his daughter's cell phone number, but in fact they originated from other telephones. Although Enger sought to avoid the calls by changing his telephone numbers several times, these efforts were unsuccessful, and the harassing calls continued through May 2008.

At Enger's prompting, the harassment campaign was investigated by Long & Foster, which sought to identify the caller's identity. Long & Foster's investigation focused on Craig Scott, a former employee who Long & Foster believed had a motive for retaliating against company officials, as well as the technical knowledge necessary to carry out the campaign. Between March and September 2007, Long & Foster gathered evidence relating to the calls, to prior computer network intrusions, and to Scott's whereabouts. Long & Foster then provided that information to local authorities, who charged Scott with making the harassing telephone calls and improperly accessing Enger's e-mail. The charges, however, were later dismissed because of a lack of supporting evidence. The investigation nonetheless had a catastrophic impact on Scott, who lost both his job and his marriage in the process.

Frustrated with its lack of progress in the investigation, Long & Foster turned to the FBI, which conducted an exten-

sive investigation and ultimately determined that the harassing calls were made not by Scott but by Cioni and her long-time friend, Sharon Thorn. The FBI learned that Cioni and Thorn had used a service known as "Spoofcard," which enabled them to mask their telephone numbers and voices, and make downloadable audio recordings of their calls. Spoofcard's billing records, which the FBI subpoenaed, indicated that over 300 calls were made from Cioni's telephones using some or all of Spoofcard's features, and more than 220 of the calls were made to Enger's various telephone numbers. Inspired by actress Paris Hilton's reported use of similar technology to access rival Lindsay Lohan's voicemail, Cioni also used Spoofcard to access Enger's voicemail, during which time she listened to new messages, played old messages, deleted messages, and left her own disguised messages. Payment for many of the Spoofcard calls was made electronically from computers at Cioni's home and workplace, using a credit card belonging to Cioni.

The FBI's investigation also revealed that Cioni had accessed or attempted to access numerous e-mail accounts belonging to Bruce Enger, his wife, Maureen Enger, their children, and several of Enger's business associates, including Patricia Freeman, Enger's former assistant. These intrusions were documented in log files kept by AOL, Google, and other Internet service providers, which indicated that computers with Internet Protocol addresses linked to Cioni's home and office had accessed or had attempted to access each of the accounts noted. All of the accounts were password protected, and none of the account holders had shared their passwords with Cioni. The FBI discovered that Cioni had gained access to many of these e-mail accounts by using an online service known as "yourhackerz.com," which, for a fee, acquired third-parties' e-mail passwords surreptitiously. Some of the payments to yourhackerz.com were made by Cioni using Thorn's credit card, with Thorn's permission, so as to "hide the paper trail."

Finally, on May 22, 2008, FBI agents obtained a warrant to search both Cioni's office and residence. These searches uncovered additional evidence linking Cioni to the e-mail intrusions and harassing telephone calls. In particular, the agents discovered on Cioni's computers images of e-mail inboxes belonging to two of Enger's acquaintances, fragments of e-mail communications between Enger family members, and a confirmation e-mail from yourhackerz.com for the purchase of Enger's e-mail password.

Cioni was indicted for her electronic communications crimes, and, following a four-day trial, was convicted on all counts. She testified at trial and corroborated much of the evidence. Specifically, she acknowledged that she had called Enger and his wife via the Spoofcard service on numerous occasions; that she had listened to Enger's voicemail messages without his permission; that she had accessed without authorization e-mail accounts held by Enger, his wife, Patricia Freeman, and several other individuals; and that she had sent printouts of some of the purloined e-mails to Enger's residence via the U.S. Postal Service. But Cioni denied having viewed any unread e-mail messages or having had any intention to intimidate Enger through these communications.

At the sentencing hearing, during which Cioni represented herself following a disagreement with her attorney, the district court reviewed the presentence report and ruled on objections raised by both sides. The court determined that Cioni's offense level was 14 which, with her criminal history category I, yielded a recommended Sentencing Guidelines range of 15 to 21 months' imprisonment. After hearing extensively from the parties, the court sentenced Cioni to a concurrent 15-month sentence on each of the 5 counts of conviction, followed by 2 years of supervised release.

This appeal followed.

## II

For her most substantial argument, Cioni contends that Counts 2 and 4 improperly charged her with felony offenses, when those counts could only have charged, based on the facts alleged, misdemeanors. She bases this claim on the way in which those counts were factually structured: each charged her with committing a misdemeanor computer fraud offense under 18 U.S.C. § 1030 and each elevated that offense to a felony by alleging that she had done so "in furtherance of" the separate crime of accessing, without authorization, communications in electronic storage under 18 U.S.C. § 2701. Although Cioni accepts that she committed the misdemeanor offenses, she contends that the indictment relied on the same conduct to elevate those offenses to felonies, thereby violating the Double Jeopardy Clause. In other words, Cioni argues that Counts 2 and 4 "are multiplicitous in that each count charged her twice with a single offense." If the elevating allegations in Counts 2 and 4 were ineffective because they violated double jeopardy principles, then, as Cioni claims, she should have been punished only for misdemeanor offenses, not felonies. She requests that we "remand [those counts] for entry of judgment on the lesser included misdemeanor charges."

Count 2 charges that Cioni accessed a computer in interstate commerce without authorization and thereby obtained information from the computer, in violation of 18 U.S.C. § 1030(a)(2)(C). Standing alone, that offense is punishable as a misdemeanor by a fine or imprisonment for not more than one year. Count 2 also alleges that the offense was committed

> *in furtherance of* criminal and tortious acts . . . [in that] Cioni accessed and attempted to access, without authorization, a protected computer operated by AOL within the Eastern District of Virginia and obtained and attempted to obtain information (*i.e.*, [Maureen Enger's] unopened electronic communications) stored on that protected computer, by means

of electronic communications from Tennessee and elsewhere, *in furtherance of* a violation of Title 18, United States Code, Section 2701.

(Emphasis added). If the violation of 18 U.S.C. § 2701 involved the commission of a distinct crime, the "in furtherance of" allegation would elevate the misdemeanor alleged in Count 2 to a felony. *See* 18 U.S.C. § 1030(c)(2)(B)(ii); *see also Boddie v. Am. Broadcasting Cos.*, 731 F.2d 333, 339 (6th Cir. 1984) (holding that similar language in the Wiretap Act [on which the "in furtherance of" enhancement in § 1030 was based] applies only when the elevating crime is "other than" the Wiretap Act violation).

The crimes described in 18 U.S.C. § 1030 and § 2701 are similar, and a violation of § 1030 may be a lesser included offense of a violation of § 2701, since a person usually must obtain information through access to a computer in order to obtain access to communications in electronic storage. Nonetheless, the two crimes are distinct and different. Section 1030(a)(2)(C) punishes the obtaining of information through the unauthorized access to a *computer*, whereas § 2701(a) punishes accessing without authority a "*facility* through which an electronic communication service is provided" and thereby obtaining communications that are "*in electronic storage*. (Emphasis added). Thus, proof of a § 2701(a) offense requires proof of facts that are not required for a violation of § 1030.

Cioni argues, however, that the conduct of accessing Maureen Enger's e-mail account and viewing her e-mail there was used to charge both the underlying violation of § 1030(a)(2)(C) as well as the elevating violation of § 2701, so that the same conduct supported both crimes. This overlap that Cioni identifies is essentially a "merger problem," "tantamount to double jeopardy," *United States v. Santos*, 553 U.S. 507, 527 (2008) (Stevens, J., concurring), where the facts or transactions alleged to support one offense are also the same used to support another. *See also United States v. Halstead*,

___ F.3d ___, No. 09-7442, 2011 WL 769053 (4th Cir. March 7, 2011). In *Halstead*, we explained:

> Thus, when the illegal activity [healthcare fraud] includes money transactions to pay for the costs of the illegal activity, a merger problem can occur if the government uses those transactions also to prosecute the defendant for money laundering. An individual cannot be convicted of money laundering for paying the essential expenses of operating the underlying crime. But when the financial transactions of the predicate offense are different from the transactions prosecuted as money laundering, the merger problem recognized in *Santos* does not . . . arise.

Slip op. at 17 (internal quotation marks and citation omitted).

Looking simply at the allegations of Count 2, it does appear that the government charged Cioni with unauthorized access or attempted access to information in Maureen Enger's e-mail account and sought to elevate that charge to a felony by alleging that the access to Maureen Enger's e-mail also constituted a violation of § 2701. Moreover, the facts that the government offered into evidence in support of Count 2 confirm this reading.

The government concedes the problem, stating:

> The evidence presented at trial more than supports a conviction under [Count 2]: it showed that the defendant did, in fact, access AOL using a hacker-provided password and obtained unopened e-mail. However, there was no evidence that the defendant committed this offense "in furtherance of any" separate and distinct "criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 1030(c)(2)(B)(ii).

* * *

>    [B]ecause the only "criminal . . . act" proven at trial that might have been a violation of 18 U.S.C. § 2701 was the same criminal act charged as the "offense" in Count 2—*i.e.*, the defendant's unauthorized access to AOL using a hacker-provided password, to obtain unopened e-mail—there was not sufficient evidence to prove that the defendant's Section 1030 offense was "in furtherance of" criminal acts that violated Section 2701.

We thus conclude that a merger problem did arise, implicating double jeopardy principles, and that therefore the felony conviction on Count 2 must be vacated, and, as requested by Cioni, the count remanded for entry of a simple misdemeanor conviction, under § 1030(a)(2)(C).

The circumstances of Count 4 are no different, although the government argues that Count 4 does not suffer from the same problem as does Count 2.

Count 4 charges that § 1030(a)(2)(C) was violated

>    in furtherance of criminal acts committed in violation of the laws of the United States; that is, CIONI intentionally attempted to access, without authorization, a protected computer operated by AOL within the Eastern District of Virginia and obtain information contained in [Patricia Freeman's] electronic mail account by means of interstate electronic communications from Tennessee and elsewhere, in furtherance of violations of Title 18, United States Code, Section 2701.

Count 4 alleges that this conduct occurred on March 10, 2008.

While the government argues that Count 4 does allege two separate and distinct crimes, one for attempting to obtain

information through unauthorized access to a computer, in violation of § 1030(a)(2)(C), which was allegedly committed in furtherance of a second crime for attempting to obtain Patricia Freeman's unopened e-mail, in violation of § 2701, the indictment does not allege facts sufficient to indicate that the two crimes were based on distinct conduct. The full recitation of facts (contained in the description of overt acts in Count 1), which is the basis for Count 4, states:

> On or about March 10, 2008, the Defendant and/or another member of the conspiracy attempted to access, without authorization, from an Internet connection at the Defendant's then-residence in Tennessee information contained within the AOL electronic mail account of [Patricia Freeman]. This information was stored on a protected computer operated by AOL within the Eastern District of Virginia. This attempt in 2008 failed.

Thus, Count 4, which claims two crimes, one in furtherance of the other, is actually based on Cioni's single unsuccessful attempt to access Patricia Freeman's AOL electronic e-mail account. Moreover, this is all that the government proved at trial. If the government had proven that Cioni accessed Freeman's e-mail inbox and then used the information from that inbox to access another person's electronic communications, no merger problem would have arisen. But the government charged and attempted to prove two crimes using the same conduct of attempting, but failing, to access only Patricia Freeman's e-mail account. This creates a merger problem, implicating double jeopardy principles.

Just as fatal to Count 4 is the fact that the indictment, as well as the evidence, failed to establish any crime under § 2701. While § 1030 criminalizes *attempts* to the same degree as completed access, *see* 18 U.S.C. § 1030(c)(2), section 2701 does not, *see* 18 U.S.C. § 2701(a). Section 2701 requires that the person *actually* access a facility without

authorization and obtain, alter, or prevent authorized access to a communication while in electronic storage. *See* 18 U.S.C. § 2701(a). Thus, while Cioni clearly violated § 1030(a) on March 10, 2008, by *attempting* to access Patricia Freeman's e-mail account, her failed attempt could not have formed the basis for a violation of § 2701(a).

For these reasons, we conclude that the felony convictions on Counts 2 and 4 must be vacated and that the district court must reduce those convictions to misdemeanors—*i.e.*, simple violations of § 1030(a)(2)(C).

III

Cioni also contends that the government's evidence in support of its convictions on Count 1 (conspiracy, in violation of 18 U.S.C. § 371) and Count 6 (unauthorized access of an electronic communication service, in violation of 18 U.S.C. § 2701, committed in furtherance of harassing telephone calls, in violation of 47 U.S.C. § 223), was insufficient. In considering this argument, we view the evidence in the light most favorable to the government and determine whether substantial evidence supported the convictions. *See United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc).

As to Count 1, Cioni contends that the government offered no evidence that she conspired with anyone else to access e-mail accounts in violation of § 1030(a), committed in furtherance of a violation of § 2701(a). This argument challenges the proof of conspiracy and repeats the argument that Cioni made as to Counts 2 and 4. But the scope of conduct alleged in Count 1 is significantly broader than that alleged in Counts 2 and 4, alleging conspiracy to commit numerous other electronic communications crimes, and the proof of record supports the broader allegations. Count 1 alleged and the evidence showed that Cioni, in concert with Sharon Thorn, hired and thus conspired with hackers to surreptitiously obtain passwords to various e-mail accounts; that these hackers did

in fact provide Cioni with the passwords; and that Cioni used the passwords successfully to access several e-mail accounts. In one instance, Cioni used a hacker-provided password to download a third party's e-mail inbox and sent e-mail folders that contained unread e-mails. Thorn participated in the conspiracy by permitting Cioni to use Thorn's credit card to purchase the passwords and thereby enabling Cioni to "hide the paper trail." In addition, Count 1 alleged that Cioni conspired to access e-mail accounts and voice mail messages, in furtherance of accessing unread e-mail messages and making telephone calls to "harass, annoy, and harm" Enger and his family. And the evidence again showed that Cioni did, without authorization, access Enger's voicemail, including unopened messages, and thereby obtained information that she used to taunt Enger and his family, for instance, referring to the Engers' recent travel and to Cioni's feigned surveillance of them. Viewing this evidence in the light most favorable to the government, it was sufficient to show that Cioni conspired unlawfully to access computers and electronic storage facilities containing unopened e-mails for the purpose of accessing other computers and harassing, annoying, and harming Enger and his family. And because the objects of this conspiracy included felony offenses that would have violated 18 U.S.C. § 1030; *id.* § 2701; and 47 U.S.C. § 223, the conspiracy was also a felony violation. *See* 18 U.S.C. § 371.

As to Count 6, Cioni contends that while she did illegally access unopened voicemails, as alleged, in violation of § 2701(a), the record contains no proof that she did so "in furtherance of" making harassing telephone calls, in violation of 47 U.S.C. § 223. Again, this contention is belied by the record, which shows clearly that Cioni made harassing telephone calls to Bruce Enger and his family, taunting them with facts about their recent travel and her alleged surveillance of them, information that she obtained by her unlawful access to Enger's voicemail. The illegal access to voicemail thus facilitated the harassing telephone calls by supplying the ammunition that made the calls harassing and threatening.

IV

Cioni next contends that in waiving her right to counsel at sentencing, she did not do so knowingly and intelligently, and that the district court thus erred in granting her request to proceed *pro se*.

After Cioni was arraigned, she hired private counsel to represent her. Before trial, however, a conflict arose between Cioni and her counsel, prompting counsel to file a motion to withdraw and Cioni to file a motion for leave to proceed *pro se*. During the hearing on these motions, Cioni's counsel remarked that Cioni was "certainly competent under [*Indiana v.*] *Edwards*," 554 U.S. 164 (2008), to represent herself. Eventually, however, Cioni withdrew her motion, stating that she was "emotionally incapab[le] of representing [herself] because [she was] so emotionally involved in th[e] matter," and counsel stayed on to represent Cioni throughout the trial.

Before sentencing, however, the issue again arose as Cioni indicated that she was dissatisfied with her counsel and wished to proceed *pro se*. Once more, counsel filed a motion to withdraw and Cioni filed a motion to represent herself *pro se*. Addressing the motions at the beginning of the sentencing hearing, the court engaged Cioni in a dialogue regarding her stated desire to proceed *pro se*, making sure that she (1) had thought about representation "very carefully"; (2) had performed "extensive[ ]" legal research; (3) was aware of the Sentencing Guidelines and the factors under 18 U.S.C. § 3553(a); (4) understood "what would take place at sentencing"; and (5) had no further questions for the court. When the court then asked her if she preferred to go forward without counsel, Cioni indicated that she did not but that financial difficulties forced her to do so. The court replied that it could appoint counsel if Cioni qualified as indigent. Cioni responded that she did not qualify, given the availability of funds in her 401(k) account and that she preferred to reserve those funds for her son. Following this dialogue, the district

court found that Cioni had knowingly and intelligently waived her right to counsel and granted her request to proceed *pro se*.

Cioni now argues that her waiver was not voluntary, due to either her financial duress or her emotional instability.

Based on her dialogue with the district court, we conclude that Cioni's waiver was a "'knowing, intelligent act done with sufficient awareness of the relevant circumstances.'" *Iowa v. Tovar*, 541 U.S. 77, 81 (2004) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). Her claim of financial duress was simply her unwillingness to make the decision to use her assets for legal representation in lieu of some other purpose. And as to her claim of emotional instability, made for the first time on appeal, the record provides insufficient evidence from which to conclude that Cioni was incapacitated by any emotional inability to represent herself. Indeed, the record reveals that she actively provided her own defense in a rational manner.

Accordingly, we reject Cioni's argument that her Sixth Amendment rights were violated when the district court granted her request to represent herself.

V

Cioni's remaining arguments do not merit extensive discussion, and we address them briefly.

A

First, Cioni contends that the district court erred in denying her motion to suppress evidence that the FBI seized during the execution of a search warrant. She argues that the affidavits submitted to the magistrate judge in support of the warrant left out information regarding when various acts occurred, thus suggesting that the acts were stale. But the nature of Cioni's conduct and the content of the affidavits belie her

claim. Her unlawful activity extended over a substantial period of time so that the affidavits necessarily included a broad range of factual information, including records of Internet service providers and telephone companies linking her directly to the e-mail intrusions and harassing calls. Moreover, much of the information was, in any event, tied to specific and relatively recent dates. We find that Cioni's claim in this regard lacks merit. *See United States v. McCall*, 740 F.2d 1331, 1335-37 (4th Cir. 1984).

She also contends that the affiants omitted known exculpatory details from the affidavits, demonstrating their reckless disregard for the truth. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Although omissions can, in certain circumstances, give rise to a *Franks* hearing, Cioni has not made the "substantial showing" necessary under *Franks* to demonstrate that FBI agents acted recklessly in preparing the affidavits in her case. *See United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990). Indeed, Cioni points to no specific evidence of recklessness. Moreover, even if the additional facts cited by Cioni were included in the affidavits, the probable cause calculus would nonetheless have remained unchanged. Under these circumstances, *Franks* is inapplicable. *See United States v. Friedmann*, 210 F.3d 227, 229-30 (4th Cir. 2000).

Finally, she contends that the affidavits did not indicate that evidence would be found at her home and her office regarding access to *unopened* e-mails. While access to unopened e-mails is a requirement for proving a violation of 18 U.S.C. § 2701(a), such evidence is not required to establish "a fair probability that . . . evidence of" unauthorized access to communications in electronic storage would be found at her office and home, particularly in light of the considerable circumstantial evidence regarding access to e-mail accounts in the affidavits. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). *All* the evidence to prove a crime need not have been sought or obtained for the affidavits to be valid.

B

Cioni also contends that her case should be dismissed because the prosecution engaged in misconduct before the grand jury. Specifically, she claims that the prosecutor read the indictment verbatim to FBI Special Agent Born and then asked if the facts stated therein were "correct," without obtaining any other evidence from Born through individualized questions. Cioni does not, however, provide any authority for the proposition that the procedure in using such a broad, leading question was improper. More importantly, she has failed to establish that she was prejudiced by any irregularity. *See United States v. Feurtado*, 191 F.3d 420, 424 (4th Cir. 1999). The district court rejected this argument, and we affirm its ruling.

C

Cioni contends for the first time on appeal that the statutes under which she was convicted are unconstitutional because their enactment exceeded Congress' powers under the Commerce Clause. This argument lacks any merit. It is well established that Congress has the power to regulate interstate communications networks, which generally fall under the "instrumentalities of interstate commerce" category described in *Gonzales v. Raich*, 545 U.S. 1, 16 (2005). *See also United States v. MacEwan*, 445 F.3d 237, 245 (3d Cir. 2006); *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004).

D

Challenging an evidentiary ruling made by the district court, Cioni contends that the court abused its discretion in relying on Federal Rule of Evidence 412 to exclude evidence she attempted to offer concerning Enger's affairs with other women. While she is correct in asserting that Rule 412 applies only to "civil or criminal proceeding[s] involving alleged sexual misconduct" and that no sexual misconduct was at issue

in her case, the error was harmless. First, the evidence Cioni sought to introduce was cumulative, inasmuch as evidence of two affairs had already been admitted into evidence. And second, the excluded evidence could not possibly have affected the verdict in light of the otherwise overwhelming evidence of guilt, including Cioni's own admissions.

E

Finally, Cioni contends that her sentence was procedurally unreasonable because the district court failed to rule on some of her objections to the presentence report and also failed to consider all of the factors set forth in 18 U.S.C. § 3553(a). These arguments, however, are also without merit. Before beginning an evaluation of the parties' objections, the district court assured itself that Cioni had an opportunity to review the presentence report and to file any objections that she had to it. Then the court took the time to hear and rule upon the parties' objections to the presentence report. *See* J.A. 141-75.

In sentencing Cioni, the court also conducted an individualized assessment of the relevant § 3553(a) factors. Indeed, the court heard extensive argument from both sides regarding sentencing, during which Cioni herself spoke, uninterrupted, for approximately 15 minutes. The court then commented on the nature of her crimes, the impact that they had on various victims, the Sentencing Guidelines, and related factors before announcing Cioni's sentence. *See United States v. Hernandez*, 603 F.3d 267, 271-72 (4th Cir. 2010).

In short, we reject Cioni's sentencing arguments.

\* \* \*

For the foregoing reasons, we vacate the felony convictions on Counts 2 and 4 and remand those counts for entry of misdemeanor convictions, as requested by Cioni. We also vacate Cioni's sentence and remand for resentencing in light of the

changes to the convictions on Counts 2 and 4. In all other respects, we affirm.

*AFFIRMED IN PART, VACATED IN PART,*
*AND REMANDED FOR FURTHER PROCEEDINGS*