Present: Hassell, C.J., Koontz, Kinser, Lemons, Goodwyn, and
Millette, JJ., and Carrico, S.J.


JACK EDWARD CARTER

v.  Record No. 091895                    OPINION BY
                              JUSTICE S. BERNARD GOODWYN
COMMONWEALTH OF VIRGINIA              June 10, 2010


FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal of a conviction for grand larceny, we

consider whether asportation and assertion of ownership of

property is sufficient to prove intent to steal that property.

Background

Jack Edward Carter was indicted by a Henrico County grand

jury for stealing paint from a home improvement supply store

(the store), in violation of Code § 18.2-95.  Carter asserted

at trial and in the Court of Appeals that the Commonwealth

failed to prove he intended to steal the paint.  At the

conclusion of a bench trial, the circuit court convicted him of

grand larceny and fixed his punishment at incarceration for a

term of three years with the execution of two years and six

months suspended.  The Court of Appeals, in a published

opinion, affirmed the judgment of the circuit court.  Carter v.

Commonwealth, 54 Va. App. 700, 709, 682 S.E.2d 77, 81 (2009).

Carter appeals.

We will apply well-established principles of appellate review and thus, we will summarize the evidence in the light most favorable to the Commonwealth, the prevailing party in the circuit court. Barnes v. Commonwealth, 279 Va. 22, 35, 688 S.E.2d 210, 217 (2010); McMillan v. Commonwealth, 277 Va. 11, 15, 671 S.E.2d 396, 397 (2009).

On August 22, 2007, Jack Edward Carter and his friend Tracy Browning traveled by truck, with several other individuals, to a home improvement supply store in Henrico County. Pursuant to a pre-determined plan, Carter entered the store and placed four 5-gallon buckets of paint, valued at $398.92, in a shopping cart. Browning waited outside for a few minutes and then followed Carter into the store. Browning waited for Carter by the "returns" desk, where customers could take items, previously purchased from the store, for a refund of the purchase price. Carter approached Browning and gave her the shopping cart containing the buckets of paint. As planned, Browning represented that the paint had been previously purchased from the store and requested payment for its return. LeDawn Sawyer, an assistant store manager who was called to approve the return, recognized Browning as someone she had been alerted to look for. Sawyer obtained Browning's identification card and contacted a loss prevention employee, who summoned the police.

Police officers arrived at the store and spoke with Browning. Browning acknowledged the details of the plan she and Carter had made to seek a refund payment for paint that neither she nor Carter had purchased from the store. Browning admitted that "the deal was supposed to be that Mr. Carter was supposed to go into the [store], get some paint, bring it out somewhere [near] the refund desk. [Browning was] to go to the refund desk and ask for a refund on the paint." There was no plan as to what she would do with the paint if the store refused to give her a refund.

The police officers received information from Browning regarding Carter's location and went to arrest him. Carter tried to flee, but the police officers apprehended him.

At the conclusion of the Commonwealth's evidence, Carter moved to strike the Commonwealth's evidence on the basis that the Commonwealth failed to prove that he and Browning intended to steal the paint. The circuit court denied the motion. Carter did not present any evidence, and renewed his motion to strike, which the court denied.

## Analysis

Carter argues that, as a matter of law, the evidence presented by the Commonwealth was not sufficient to find him guilty of grand larceny because the Commonwealth failed to prove he had an intent to steal the paint. The Commonwealth

3

claims that the asportation of the paint by Carter, and the assertion of ownership of the paint, pursuant to his plan, is sufficient evidence to support a finding that Carter intended to steal the paint so that it could be returned to the store for a refund.

Carter does not dispute that there was asportation of the paint by him, nor does he dispute that he and Browning were working together and that each is criminally responsible for the actions of the other. See McMorris v. Commonwealth, 276 Va. 500, 505-06, 666 S.E.2d 348, 350-51 (2008); Taylor v. Commonwealth, 260 Va. 683, 687-88, 537 S.E.2d 592, 594 (2000). His sole assignment of error concerns the allegation that the scheme he was involved in with Browning did not involve stealing the store's paint because, after asserting ownership of the paint, he and Browning planned to relinquish the paint upon receiving payment from the store, without removing the paint from the store. He notes there was no agreement as to what would be done with the paint if the store did not pay the refund.

When a defendant challenges the sufficiency of the evidence on appeal, the reviewing court must accord the judgment of the trial court sitting without a jury the same weight as a jury verdict. Commonwealth v. Taylor, 256 Va. 514, 518, 506 S.E.2d 312, 314 (1998); Saunders v. Commonwealth, 242

4

Va. 107, 113, 406 S.E.2d 39, 42 (1991); Evans v. Commonwealth, 215 Va. 609, 613, 212 S.E.2d 268, 271 (1975). It is the appellate court's duty to examine the evidence that tends to support the conviction and to uphold the conviction unless it is plainly wrong or without evidentiary support. Code § 8.01-680; Commonwealth v. Jenkins, 255 Va. 516, 520, 499 S.E.2d 263, 265 (1998); Walton v. Commonwealth, 255 Va. 422, 426, 497 S.E.2d 869, 871 (1998); Tyler v. Commonwealth, 254 Va. 162, 165-66, 487 S.E.2d 221, 223 (1997). In making this determination, the appellate court must examine the evidence in the light most favorable to the Commonwealth. Jenkins, 255 Va. at 521, 499 S.E.2d at 265; Walton, 255 Va. at 425-26, 497 S.E.2d at 871.

In Virginia, larceny is a common law crime. We have defined larceny as "'the wrongful or fraudulent taking of personal goods of some intrinsic value, belonging to another, without his assent, and with the intention to deprive the owner thereof permanently.'" Skeeter v. Commonwealth, 217 Va. 722, 725, 232 S.E.2d 756, 758 (1977) (quoting Dunlavey v. Commonwealth, 184 Va. 521, 524, 35 S.E.2d 763, 764 (1945)); see also Payne v. Commonwealth, 222 Va. 485, 487, 281 S.E.2d 873, 874 (1981). Stated simply, larceny requires that there be a taking and asportation of the seized goods, coupled with an

intent to steal those goods.[1]  Britt v. Commonwealth, 276 Va.

569, 575, 667 S.E.2d 763, 766 (2008); see Bryant v.

Commonwealth, 248 Va. 179, 183, 445 S.E.2d 667, 670 (1994);

Mason v. Commonwealth, 200 Va. 253, 256, 105 S.E.2d 149, 151

(1958).  "The defendant's intent to steal must exist at the

time the seized goods are moved."  Britt, 276 Va. at 575, 667

S.E.2d at 766.

We have stated that "[i]ntent is the purpose formed in a

person's mind at the time an act is committed."  Taylor, 256

Va. at 519, 506 S.E.2d at 314; see Guill v. Commonwealth, 255

Va. 134, 139, 495 S.E.2d 489, 492 (1998); Ridley v.

Commonwealth, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979).

"Intent may, and often must, be inferred from the facts and

circumstances of the case, including the actions of the accused

and any statements made by him."  Stanley v. Webber, 260 Va.

90, 96, 531 S.E.2d 311, 315 (2000); Taylor, 256 Va. at 519, 506

S.E.2d at 314; see Guill, 255 Va. at 139, 495 S.E.2d at 492;

Ridley, 219 Va. at 836, 252 S.E.2d at 314.  It is undisputed

---

[1] "For larceny there must be an intent to steal (or, as
stated in the Latin form, animus furandi).  It is, of course,
not very helpful to say that to be guilty of stealing property
one must have an intent to steal the property.  It is more
helpful to state (as it is sometimes put) that, for larceny,
one must intend to deprive the owner of the possession of his
property either permanently or for an unreasonable length of
time . . . ."  3 Wayne R. LaFave, Substantive Criminal Law
§ 19.5 at 87 (2d ed. 2003).

that at the time he picked up the paint, Carter intended to have his accomplice assert ownership of the store's paint without paying the store for that paint, and to ask the store to pay for its return. True to their scheme, Carter's accomplice moved the paint, represented ownership of that paint to the store's employee, and requested a refund payment.

Common law larceny requires a trespassory taking. Maye v. Commonwealth, 213 Va. 48, 49, 189 S.E.2d 350, 351 (1972); Overstreet v. Commonwealth, 17 Va. App. 234, 236, 435 S.E.2d 906, 907 (1993). Carter, in essence, asserts that there was no trespassory taking and intent to permanently deprive the store of its paint because his scheme did not involve the paint being at any time physically removed from the store. At the core of Carter's defense is the issue of what constitutes sufficient possession and asportation to sustain a conviction for larceny from a self-service retail store.

A trespassory taking is a taking or removal of possession of property from the owner with felonious intent; a violation of an owner's possessory right constitutes a trespassory taking. Richards v. Commonwealth, 54 Va. (13 Gratt.) 803, 806 (1856); Overstreet, 17 Va. App. at 236, 435 S.E.2d at 907-08. Because every customer in a self-service store has implied permission to move merchandise, placed on open display, unconcealed about the premises of the store, the trespassory

7

taking and carrying away of the merchandise of another does not usually occur at such a store when the property is moved on the premises. If, however, there is some conduct by the customer which makes the customer's possession clearly adverse to the store, there is a trespassory taking. Freeman v. Meijer, Inc., 291 N.W.2d 87, 89 (Mich. Ct. App. 1980); see Jones v. State, 314 So. 2d 876, 878 (Ala. Crim. App. 1975).

A trespassory taking is most easily proven by a defendant leaving the store without paying for merchandise. However, removal of the targeted property from the owner's premises is not required for there to be a trespassory taking, and permanent loss by the owner is not a required element of larceny. Whalen v. Commonwealth, 90 Va. 544, 549, 19 S.E. 182, 183 (1894). "One may be said to have taken another's property by trespass though he has not removed it from the other's premises or from his presence." Wayne R. LaFave, Criminal Law § 19.2(i), at 979 (5th ed. 2010). If the defendant does not leave the premises, the evidence must establish that the defendant in some way, within the store, exercised trespassory possession of the goods inconsistent with the owner's rights. See, e.g., Bryant, 248 Va. at 183-84, 445 S.E.2d at 670; Welch v. Commonwealth, 15 Va. App. 518, 523-24, 425 S.E.2d 101, 105 (1992); see also Groomes v. United States, 155 A.2d 73, 75 (D.C. 1959); State v. Grant, 373 A.2d 847, 850 (Vt. 1977).

8

The representation of ownership of the store's paint by Carter's accomplice was an exercise of possession clearly adverse to the store and inconsistent with the store's right to its paint. It is also evidence of his accomplice's immediate dominion and control of the paint. The assertion of ownership in seeking a refund was evidence of and, in fact, confirmed that there had been a trespassory taking of the paint, and it evidenced an intent to deprive the owner thereof permanently. See People v. Davis, 965 P.2d 1165, 1169-70 (Cal. 1998).

The trespassory taking, evidenced in the instant case by asserting ownership, is no different than a trespassory taking by walking out of the store without paying for the paint. At the point ownership of the paint was asserted, there was evidence that Carter and his accomplice had taken the store's paint just the same as if they had walked out of the store with that paint. Where there is evidence that an individual has acted in a manner that is inconsistent with that of a prospective purchaser, and has exercised immediate dominion and control over the property, despite his continued presence within the owner's store, such conduct establishes sufficient possession to constitute larceny. Welch, 15 Va. App. at 524, 425 S.E.2d at 105; accord State v. White, 576 P.2d 138, 139 (Ariz. Ct. App. 1978); State v. Carswell, 249 S.E.2d 427, 429 (N.C. 1978); Hutchinson v. State, 427 P.2d 112, 114 (Okla.

9

Crim. App. 1967); State v. Houston, 688 S.W.2d 838, 840 (Tenn. Crim. App. 1984). When one wrongfully takes property of another with intent to deprive the owner thereof, larceny is complete, though the accused afterwards abandons it. Slater v. Commonwealth, 179 Va. 264, 267, 18 S.E.2d 909, 911 (1942); Whalen, 90 Va. at 549, 19 S.E. at 183; see also Williams v. Commonwealth, 278 Va. 633, 635-38, 685 S.E.2d 178, 179-81 (2009) (despite the fact that the defendant ultimately returned the victim's cellular telephone to the victim, defendant "committed a larceny" that was "a continuing crime" when he "took [the victim's] cell phone without permission from a 'ledge' where [the victim] had left it.").

"One who takes another's property intending at the time he takes it to use it temporarily and then to return it unconditionally within a reasonable time – and having a substantial ability to do so – lacks the intent to steal required for larceny." 3 Wayne R. LaFave, Substantive Criminal Law § 19.5(b), at 89 (2d ed. 2003). An intent to return, however, must be unconditional. Id. at 90. Thus it is no defense to larceny that the taker intends to return the property only if he should receive a reward for its return, or only upon some other condition which he has no right to impose.

Id.[2]  According to their scheme, Carter and his accomplice intended to return the paint upon receipt of a payment for returning it, a condition which they had no right to impose. We hold that the Court of Appeals did not err in concluding that the evidence was sufficient to support Carter's conviction.

## Conclusion

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

Affirmed.

JUSTICE MILLETTE, with whom JUSTICE KOONTZ joins, dissenting.

I respectfully dissent.

Although I do not disagree with the majority that under certain circumstances, the asportation of property and an

---

[2] See People v. Davis, 965 P.2d 1165 (Cal. 1998) (defendant's intent to claim ownership of certain merchandise taken from shelf of store and to return it to the store on condition that the store pay refund constitutes intent to permanently deprive within meaning of larceny law); Slaughter v. State, 38 S.E. 854 (Ga. 1901) (defendant, a private detective, took another's watch, then returned it to its owner claiming a reward; conviction of larceny affirmed); State v. Hauptmann, 180 A. 809 (N.J. 1935) (defendant carried away Lindbergh baby in its nightdress with intent to return the nightdress if Lindbergh negotiated with him for payment for the baby's return; conviction of murder in the commission of larceny affirmed, for it was larceny to take the nightdress with the intent to return it only on condition of negotiation).
To take property by trespass for the purpose of "selling" it to the owner is larceny.  Rollin M. Perkins & Ronald N. Boyce, Criminal Law, Larceny § 1, at 329 (3d ed. 1982).

11

assertion of ownership can support a finding that a person intended to steal the property, even though the property had not yet left the store, neither the evidence presented by the Commonwealth nor the circuit court's findings support that conclusion in this case. An assertion of ownership for the sole purpose of extracting a fraudulent refund does not constitute an intent to permanently deprive the owner of his or her property when the intent of the assertion is to obtain money or property by false pretenses.

The Commonwealth's theory of the case was that Carter's intent was to obtain a cash refund from the home improvement supply store (the store) in exchange for paint. In his opening statement, the attorney for the Commonwealth stated:

> The intent when they went to the [store] together that day was for . . . Carter to go into the store first to select paint, . . . and put it in a cart and bring it to the front of the store where Ms. Browning was to then take custody of that and return it as if it had been purchased. They had a receipt on [sic] it was being returned for cash.

The co-defendant, Browning, testified as a witness for the Commonwealth that, as directed by Carter, she followed Carter into the store and waited by the return desk for him to bring her what she was supposed to return. Carter pushed a shopping cart with paint up to her and she pushed the cart up to the return desk to return the paint.

Upon cross-examination, Browning acknowledged that the plan was for Carter to go into the store, get some paint, and bring it to the return desk. Browning was to go to the return desk and ask for a refund for the paint. The following exchange took place during cross-examination of Browning:

Q    The paint was never to leave the store, was it?

A    No.

On redirect, Browning was asked whether she was going to take the paint if the store had denied the return. Browning responded:

A    No, I mean, well probably I don't know what I would have done. No, because I was told, I probably would have, I don't know.

Q    You still don't know what you were going to do?

A    No, I don't even know at that point right then. I mean, I just knew what I was supposed to do in the first place.

Q    Because the intent was to get money to –
Although the indictment charged Carter with grand larceny in violation of Code § 18.2-95, alleging that Carter stole property, namely, paint, having a value of two hundred dollars or more, it is clear that the Commonwealth believed that Carter's intent was to steal money. At the conclusion of the evidence, the Commonwealth moved to amend the indictment to substitute "U.S. Currency . . . of [the store]" for "paint" as the property involved in the larceny, but the circuit court

13

denied the motion to amend. When Carter moved to strike the Commonwealth's evidence on the ground that there was no intent to steal the paint, the Commonwealth responded, "I think it's an intent to steal money." However, the Commonwealth then argued that the intent to steal the money was by means of stealing paint and then returning paint.

The circuit court found that

the overall intent from the evidence I've heard so far was [to] take the paint, take it up and get a false refund, get the money. And I think they certainly had the intent to steal when they went in there and when you use the paint . . . with the intent to use that as a vehicle to get the money, I think that's sufficient.

Larceny requires an intent to deprive the owner of its property permanently. Tarpley v. Commonwealth, 261 Va. 251, 256, 542 S.E.2d 761, 763 (2001). I disagree with the majority's statement that the essence of Carter's argument is that there was no trespassory taking and intent to permanently deprive the store of its property because the paint was never physically removed from the store. Rather, Carter's argument is that he never had the intent to keep the paint, and thus never intended to permanently deprive the owner of the paint. Carter's intent was to use the paint as a vehicle in his scheme to defraud the store of the value of the paint. According to the evidence, the gravamen of Carter's offense was not the larceny of the paint, but obtaining a fraudulent refund for the

14

paint, constituting the crime of obtaining money by false pretenses.

Under Virginia law, false pretenses and larceny are separate offenses, and there is no general theft statute, as there is in most states, that encompasses both crimes. United States v. Good, 326 F.3d 589, 592 n.5 (4th Cir. 2003). "The Commonwealth of Virginia has always purported to treat the three basic theft crimes of larceny, embezzlement, and false pretenses as separate and distinct offenses. Virginia maintains separate statutes for each crime." Id. (quoting John W. Bartram, Note, Pleading for Theft Consolidation in Virginia, 56 Wash. & Lee L. Rev. 249, 249 (1999)).[1]

The elements of obtaining money by false pretenses are:

(1) an intent to defraud; (2) an actual fraud; (3) use of false pretenses for the purpose of perpetrating the fraud; and (4) accomplishment of the fraud by means of the false pretenses used for the purpose, that is, the false pretenses to some degree must have induced the owner to part with his property.

Riegert v. Commonwealth, 218 Va. 511, 518, 237 S.E.2d 803, 807-08 (1977) (quoting Bourgeois v. Commonwealth, 217 Va. 268, 272, 227 S.E.2d 714, 717 (1976)); Code § 18.2-178. The evidence in

_____

[1] In People v. Davis, 965 P.2d 1165, 1167 (Cal. 1998), relied upon by the majority, the Supreme Court of California noted that the formerly distinct offenses of larceny, embezzlement, and obtaining property by false pretenses were consolidated by statute in California into the single crime of

this case could only establish that Carter, with the aid of Browning, was attempting to commit the crime of obtaining money by false pretenses.  Both the Commonwealth and the circuit court clearly understood that there was never any intent to permanently deprive the store of the paint.  The only intent was to fraudulently obtain the refund money by means of the false pretense that Browning had previously purchased the paint and was entitled to a refund.

I do not dispute the line of cases cited by the majority that hold it is larceny when property is taken with the intent to permanently deprive the owner, and is returned by the wrongdoer only when a reward is received in exchange.  However, to apply that analysis when property is merely presented for a fraudulent refund ignores the fact that the wrongdoer's intent is not to obtain the property, but the cash refund.  The property is merely the instrument of the fraud.[2]

In addition, there is no evidence to support a finding that Carter intended to take the paint and return it only in

theft, and conviction of theft can be sustained if the evidence establishes the existence of one of the offenses.

[2] In many jurisdictions, when a wrongdoer asserts ownership of an item taken from a store in a fraudulent attempt to falsely obtain a refund, the offense is prosecuted as obtaining property or money by false pretenses.  See Anderson v. State, 738 So. 2d 253, 254, 256-58 (Miss. Ct. App. 1998); Kansas City v. Fritz, 607 S.W.2d 837, 838 (Mo. Ct. App. 1980); State v. Hauck, 209 N.W.2d 580, 583-84 (Neb. 1973); State v.

exchange for a refund. The Court of Appeals erred when it presumed that the circuit court concluded that Browning would have removed the paint from the store if she did not obtain a refund, see Carter v. Commonwealth, 54 Va. App. 700, 705, 682 S.E.2d 77, 80 (2009), because the evidence presented by the Commonwealth was that there was no intent by either Carter or Browning to ever take the paint out of the store. Browning testified that she did not know what she would have done if a return was refused, because that was not the scheme, and she and Carter had only discussed her obtaining the refund. There was no evidence of any intent to keep the paint, such as a need for the paint or even the means of removing the paint from the store. In fact, Carter was down the street in a bar waiting for Browning to come to him with the refund money. The Commonwealth never argued that Browning intended to keep the paint and, in fact, attempted to amend the indictment to indicate that money, instead of the paint, was the subject of the larceny. The Commonwealth argued that the property stolen in the larceny was the refund money. The circuit court never found an intent to permanently deprive the store of the paint because the court found that the intent was to steal money using the paint as a vehicle to get a refund.

---

Ledwell, 614 S.E.2d 562, 564 (N.C. Ct. App. 2005); State v. Ewers, 458 P.2d 708, 709 (Ore. Ct. App. 1969).

Finally, although proof that the accused obtained money by false pretenses will support a conviction under an indictment for larceny, the Commonwealth must prove all of the elements of obtaining money by false pretenses. Riegert, 218 Va. at 518, 237 S.E.2d at 807-08. The Commonwealth established that Carter had an intent to defraud by the false pretense of exchanging the paint for a refund. However, the fraud was never accomplished because no money was ever obtained as a result of the fraud. Since Carter never obtained money as a result of the fraud, he can only be convicted of the crime of attempted false pretenses. Code §§ 18.2-26, 18.2-178.

However, an accused is entitled to be clearly informed of the charges against him and the Commonwealth cannot charge Carter with larceny of paint and retrospectively argue that he is guilty of larceny (or even attempted larceny) of money. Baker v. Commonwealth, 225 Va. 192, 194-95, 300 S.E.2d 788, 789 (1983).

For the reasons stated, I would reverse Carter's conviction for grand larceny.