COURT OF APPEALS OF VIRGINIA

Present:  Judges Frank, Kelsey and McClanahan
Argued at Chesapeake, Virginia

ALLEN JEROME SMITH, JR.

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2523-09-1            JUDGE ELIZABETH A. McCLANAHAN
                                                    MAY 10, 2011

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
A. Bonwill Shockley, Judge

T. Gregory Evans, Assistant Public Defender, for appellant.

Rosemary V. Bourne, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.

Allen Jerome Smith, Jr., was convicted, after a bench trial, of one count of burglary, two

counts of attempted burglary, and two counts of petit larceny.  He argues the evidence was

insufficient to support his convictions.  We disagree and affirm his convictions.

I.  STANDARD OF REVIEW

"On review of a challenge to its sufficiency, we view the evidence in the light most

favorable to the Commonwealth, the party prevailing below, and grant to it all reasonable

inferences fairly deducible therefrom."  Nolen v. Commonwealth, 53 Va. App. 593, 595, 673

S.E.2d 920, 921 (2009); see also Barnes v. Commonwealth, 279 Va. 22, 35, 688 S.E.2d 210, 217

(2010).  "Sufficiency-of-the-evidence review involves assessment by the courts of whether the

evidence adduced at trial could support any rational determination of guilt beyond a reasonable

doubt."  United States v. Powell, 469 U.S. 57, 67 (1984).  See also McMillan v. Commonwealth,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

277 Va. 11, 19, 671 S.E.2d 396, 399 (2009); Jones v. Commonwealth, 277 Va. 171, 182, 670 S.E.2d 727, 734 (2009); Clanton v. Commonwealth, 53 Va. App. 561, 566, 673 S.E.2d 904, 906-07 (2009) (*en banc*). As such, "[i]t is the appellate court's duty to examine the evidence that tends to support the conviction and to uphold the conviction unless it is plainly wrong or without evidentiary support." Carter v. Commonwealth, 280 Va. 100, 104, 694 S.E.2d 590, 593 (2010) (citing Code § 8.01-680).

## II. BACKGROUND AND ANALYSIS

In January 2008, Detective Terrance D. Shields, with the Virginia Beach Police Department, interviewed Smith in connection with a series of break-ins and attempted break-ins at the Waterford Apartments and Lake Smith Condos, which are located in the same general area of Virginia Beach.[1] Smith admitted to Shields that he committed numerous break-ins in this area because he needed money. He would use a razor to cut an "L" shape in window screens or look for places with unlocked doors. Smith stated that his intention was always to steal money or small items of property and never to harm the persons within. If he encountered an occupant, he would leave. Smith told Shields he committed these offenses from the end of the summer to the end of the year in 2007, and chose ground-floor apartments near the waterway. After the interview, Detective Shields took Smith on a drive through the Waterford Apartments area, and Smith pointed out specific apartments where he committed or attempted to commit the break-ins.

When Shields and Smith returned to the police station, Smith provided a written statement in which he said he was taking responsibility for his actions. Smith wrote that he made a decision to steal from others and would use a razor to cut screens and enter into the homes. He stated that he specifically targeted apartment complexes such as the "Waterford" and "Lake

---

[1] Although there were other apartments in the same area that were involved in the investigation, the two apartments at issue in this appeal are located at the Waterford Apartments and Lake Smith Condos.

Smith." He also wrote that he cooperated with detectives by showing them where and telling them how he committed these offenses.

At his trial, Smith testified that he never confessed these crimes to Detective Shields and claimed that Detective Shields was lying about the statements Smith made during the interview and drive through the Waterford Apartments area. Additionally, Smith testified that his written statement was made under pressure by the police urging him to cooperate. According to Smith, he did not commit the crimes with which he was charged but was at home on each occasion.[2]

### A. Burglary of the Grange Residence on September 26

Smith was convicted of breaking and entering into the residence of Therese Grange on September 26, 2007, with the intent to commit larceny therein.[3] He argues there was insufficient evidence to prove "the entry into the Grange residence was made with the necessary intent."[4]

The evidence proved that when Grange, a 58-year-old, white woman, went to bed on the evening of September 26th, she left her patio door unlocked, with her television and living room light on. She awoke at approximately 3:00 a.m., and when she was picking up her blanket from the floor, she saw a man next to her bed. After she began flailing her arms, kicking her legs, and screaming, she chased the intruder out of her apartment, and he left through the patio door.

---

[2] Smith admitted breaking into the "Zander" residence and pled guilty to charges related to that residence. He testified that the only verbal statements he made during the interview and drive with Shields which were true referred to the Zander residence and that the only true statements in his written statement related to the "Zander" residence. Smith "was not, of course, required to testify but he voluntarily did so and gave an account that the trier of fact rejected as inherently incredible." Covil v. Commonwealth, 268 Va. 692, 695, 604 S.E.2d 79, 82 (2004). Having rejected Smith's attempted explanation, the trial court was entitled to "draw the reasonable inference that his explanation was made falsely in an effort to conceal his guilt." Id. at 696, 604 S.E.2d at 82.

[3] Pursuant to Code § 18.2-91, a person is guilty of statutory burglary if that person breaks and enters in the daytime or enters in the nighttime a residence "with intent to commit larceny."

[4] Smith does not contend that the Commonwealth failed to prove he was the criminal agent or that a breaking and entering occurred.

During his interview, Smith told Shields he specifically recalled an encounter with an "older, white woman" at the Waterford Apartments who left her sliding glass door open and her television and light on. Smith said the lady woke up when he was in her bedroom "looking for some money" and he left when she confronted him. Smith also pointed out this same apartment to Shields and described it as the one where he encountered the "older female." Smith told Shields that when he broke into apartments during late summer into the end of 2007, his intent was to steal. He confirmed this intention in his written statement.

"[I]n a prosecution of burglary with intent to commit larceny, the state must prove the specific intent to steal beyond a reasonable doubt." Ridley v. Commonwealth, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979). "'Intent in fact is the purpose formed in a person's mind and may be, and frequently is, shown by circumstances. It is a state of mind which may be shown by a person's conduct or by his statements.'" Vincent v. Commonwealth, 276 Va. 648, 652, 668 S.E.2d 137, 140 (2008) (quoting Hargrave v. Commonwealth, 214 Va. 436, 437, 201 S.E.2d 597, 598 (1974)). We believe the surrounding facts and circumstances adequately established Smith's intent to commit larceny when he entered the Grange apartment. As he stated to Shields and in his written statement, when he broke into other persons' homes, his intention was always to steal property or money. Additionally, he told Shields that when he was in Grange's apartment, he was "looking for some money."[5] Therefore, the evidence was sufficient to prove "the entry into the Grange residence was made with the necessary intent."

---

[5] The fact that nothing was actually taken from the Grange apartment is of no consequence considering Ms. Grange was alerted to Smith's presence and chased him out of her apartment.

B.  Attempted Burglary of the Byrns Residence on September 29-30

Smith was convicted of attempting to break and enter into the residence of Weldon Byrns on September 29, through September 30, 2007, with the intent to commit larceny therein.  He argues the evidence was insufficient to prove there was an attempt to break and enter into the Byrns apartment.[6]

On September 30, Officer Karl L. Harvey, with the Virginia Beach Police Department, responded to a call made from the home of Weldon Byrns.[7]  Byrns, who was 93 years old, occupied a ground-floor apartment at Lake Smith Condos.[8]  Officer Harvey observed muddy footprints in an otherwise "immaculate home" and a window screen that had been cut by a knife from the outside.  Byrns testified that each time he called police, it was to report a break-in or attempted break-in.  In addition, Nicolae Gheorghe, Byrns' handyman, testified he had to replace three screens during this time period because they had been cut like an "L."  Detective Shields testified Smith told him he burglarized an older man's apartment on multiple occasions in an apartment near Waterford Apartments and he would use a razor to cut the screen in an "L" shape.[9]

---

[6] Smith does not argue on appeal that the Commonwealth failed to prove he was the criminal agent.

[7] Officer Harvey testified that Weldon Byrns' son made the call to police.

[8] Byrns lived in two apartments that had been converted into one large apartment.

[9] At trial, Smith denied he broke into or attempted to break into the Byrns residence.  He also denied making most of the statements testified to by Detective Shields and claimed the written statement was the product of pressure from the police, except to the extent the statement referred to the "Zander" residence.  Having found Smith's testimony "unworthy of belief," the trial court was entitled to "'consider whatever [it] concluded to be perjured testimony as affirmative evidence of guilt.'"  Morris v. Commonwealth, 269 Va. 127, 134, 607 S.E.2d 110, 114 (2005) (quoting Wright v. West, 505 U.S. 277, 296 (1992)).

"An attempt to commit a crime is composed of two elements: (1) the intent to commit it; and (2) a direct, ineffectual act done toward its commission." Barrett v. Commonwealth, 210 Va. 153, 156, 169 S.E.2d 449, 451 (1969). The act of breaking and entering "must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation." Id. Officer Harvey observed evidence of a break-in after receiving a call from the Byrns home, and Gheorghe described damage to screens he had to replace during this time frame consistent with Smith's method of cutting screens to gain entry. Coupled with Smith's statements that his intent when breaking into the apartments during this time period was to steal money and his testimony denying the attempt, which the trial court rejected as incredible and could consider as affirmative evidence of guilt, the trial court could rationally find that there was an attempt to break and enter into Byrns' apartment. Accordingly, the evidence was sufficient to prove that Smith attempted to commit burglary of the Byrns residence.

C. Attempted Burglary of the Byrns Residence on December 25-26

Smith was convicted of attempting to break and enter into the Byrns residence on December 25, 2007, through December 26, 2007, with the intent to commit larceny therein. He argues the evidence was insufficient to prove there was an attempt to break and enter into the Byrns apartment on these dates as well.

On December 26, Officer Arthur J. Guay responded to a call from Mr. Byrns' home. He observed that a screen had been removed from a window[10] but determined that no access had been gained into the Byrns home due to a piece of wood that had been placed in the window. Byrns' handyman, Gheorghe, testified that on one occasion in which he was called about someone breaking into Byrns' apartment, he had to replace a screen that had been thrown onto

---

[10] Officer Guay testified that the window from which the screen had been removed was the same window on which the screen had been cut during an earlier break-in.

the ground. And Smith told Detective Shields that on some occasions when he tried to break into the older gentleman's apartment, he was unable to gain entry. Smith's statement that his intent was always to steal when he attempted to break into these apartments, as well as his testimony denying the attempt, which the trial court rejected as incredible, provided additional evidence of his guilt. When this evidence is considered as a whole, it is sufficient to support the trial court's finding that an attempt to break and enter into the Byrns apartment was made during these dates. "While no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" Stamper v. Commonwealth, 220 Va. 260, 273, 257 S.E.2d 808, 818 (1979) (quoting Karnes v. Commonwealth, 125 Va. 758, 764, 99 S.E. 562, 564 (1919)).

### D. Larceny Against Byrns on December 21-22

Smith was convicted of committing a petit larceny of money against Mr. Byrns on December 21, 2007, through December 22, 2007. He argues the evidence was insufficient to prove that a larceny occurred on this date.[11]

On December 22, Officer Harvey responded to a call from the Byrns home and, upon his arrival, met with Hattie Taylor, one of Mr. Byrns' caregivers. Both Harvey and Taylor observed muddy footprints throughout the apartment. When Taylor realized a break-in had occurred, she told Mr. Byrns to check his wallet,[12] and they discovered all of his money was missing. Ms. Taylor testified she accompanied Mr. Byrns to the bank on the previous day where he withdrew $200, and gave her $20, leaving $180 in his wallet. This evidence was sufficient to

---

[11] Smith does not argue that the evidence was insufficient to prove he was the criminal agent or that he committed a burglary on that date, only that the evidence was insufficient to prove that a larceny occurred during the burglary.

[12] Mr. Byrns routinely kept his wallet in the pocket of his pants, which he would place over a chair in his bedroom before going to bed each evening.

prove a "wrongful taking of personal property of some intrinsic value, belonging to another, "without his permission and with the intent to permanently deprive him of that property." Stanley v. Webber, 260 Va. 90, 96, 531 S.E.2d 311, 315 (2000).

E. Larceny Against Byrns on December 31

Smith was convicted of committing a petit larceny of Mr. Byrns' pants on December 31, 2007. He argues the evidence was insufficient to prove that a larceny occurred on this date as well.

On December 31, Officer Darryl Kagel responded to a call from the Byrns home and found a window open, with loose dirt outside the window as though someone had stepped on it. He also observed dirt inside the home below the window. Upon searching outside the home, Officer Kagel found a pair of khaki pants in some bushes, which he returned to Mr. Byrns. Pearline Wilson, another caregiver, was present at the Byrns home when the break-in occurred. She was in another bedroom, lying in bed talking on the phone with her sister, when she saw the intruder's hands on a bag sitting next to her. She began screaming, and when Mr. Byrns heard her screams, he ran out of his bedroom and saw the intruder as he was running out of the apartment. Smith told Detective Shields he specifically recalled taking a pair of pants during one of the break-ins at the older gentleman's apartment and threw them on the ground when he realized the wallet was not in the pants. This evidence was sufficient to prove a larceny of the pants. See id.[13]

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

---

[13] At trial, Mr. Byrns confirmed that he regularly wears khaki pants. Although at trial he could not specifically recall having his pants stolen during the general time frame in which the break-ins occurred, this is not surprising considering Officer Kagel returned them to Mr. Byrns while he was there on the morning following the break-in.