COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Raphael and Callins
Argued by videoconference

AARON JACOB GOLDMAN

                                                          OPINION BY
v.        Record No. 0208-21-1                    JUDGE DOMINIQUE A. CALLINS
                                                          APRIL 19, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
David W. Lannetti, Judge

J. Barry McCracken, Assistant Public Defender, for appellant.

Justin B. Hill, Assistant Attorney General (Mark R. Herring,[1]
Attorney General, on brief), for appellee.


Aaron Goldman appeals his conviction of grand larceny in violation of Code § 18.2-95.

He argues that the evidence was insufficient to support his conviction because (1) the

Commonwealth failed to prove that he was the criminal agent who committed the larceny, and

(2) the Commonwealth failed to prove the value of the stolen goods was above $500 at the time

of the theft.  We hold that the evidence is insufficient to prove Goldman committed grand

larceny and reverse the conviction.

I.  BACKGROUND

In the fall of 2019, the Eastern Virginia Medical School in Norfolk hired S.B. Ballard

Construction Company, a general contractor, to perform construction work.  As part of its

construction work, Ballard subcontracted with Hiller Systems to install a fire suppression system

---

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

for the school. Hiller Systems' subcontract assignments included a construction site referred to as "EVMS-EVAB."

On October 31, 2019, an individual stole tools from a large brown "job box" maintained on the EVMS-EVAB construction site. The tools were never recovered. The police later developed Goldman[2] as a suspect, and he was indicted on May 6, 2020.[3]

The Circuit Court for the City of Norfolk conducted a bench trial on September 24, 2020. At trial, the Commonwealth introduced a surveillance video ("EVMS video") that purported to show the theft. The video depicts an individual reaching into the job box, located off-screen, lifting tools from the job box, and putting the tools in a bag. The video does not capture which tools, or how many tools, were put in the bag. Goldman does not dispute that he is the individual in the video.[4]

As part of its case-in-chief, the Commonwealth called Lenzy Chambers, an employee of Ballard, to identify and authenticate the video.[5] Chambers confirmed the location in the video as within the EVMS-EVAB construction site. He described the video as "old footage" depicting an "IT rack in the hallway as well as the S.B. Ballard Construction office," and "the side hallway

---

[2] Although the record does not specify Goldman's relationship to either S.B. Ballard Construction or to Hiller Systems, Goldman is identified as a "construction worker."

[3] Goldman was originally indicted on three charges: felony possession with intent to sell or distribute under Code § 18.2-108.01, grand larceny under Code § 18.2-95, and felony attempted possession with intent to sell or distribute under Code §§ 18.2-26 and 18.2-108.01. The trial court, on the Commonwealth's motion, ordered a *nolle prosequi* of the third charge. The trial court granted Goldman's motion to strike for the first charge. This ruling left only the grand larceny charge to be decided, which charge is the subject of this appeal.

[4] During trial, the Commonwealth called a witness familiar with Goldman who identified Goldman as the individual shown removing tools from the job box in the EVMS video.

[5] Chambers's position in S.B. Ballard Construction is unclear from the record. At trial, however, Goldman did not object to the Commonwealth calling Chambers to authenticate the EVMS video or otherwise challenge Chambers's capacity as an authentication witness.

- 2 -

leading back to the storage area where contractors work." He also testified that the date of the video was January 31, 2019, through the following exchange:

> Q. So you were employed back on January 31st of 2019?
>
> A. Correct, sir.
>
> Q. On that date did you review an old footage from your job site?
>
> A. I don't know if it was that day. I think it was the following date that I was requested to pull the footage.
>
> . . . .
>
> Q. Does this video fairly and accurately depict the video that you pulled on that particular day?
>
> A. Yes, sir.
>
> Q. And you reviewed the video, and the video date is dated January 31st of 2019?
>
> A. Yes, sir.

Chambers then explained that after viewing the video, he exported it to a thumb drive and "issued that [drive] to the project manager on site to be reviewed by anybody that was on site." Following Chambers's testimony, the trial court admitted the video into evidence as the "EVMS Security Tape." The video was submitted to the trial court as one of multiple digital files burned onto a DVD.

David Farmer, a field superintendent for Hiller Systems, also testified on behalf of the Commonwealth. He reviewed the EVMS video and confirmed the location of the off-screen job box. He identified as stolen several construction tools that were regularly maintained in the job box. He also testified that the stolen tools were last seen on October 31, 2019, and that they were purchased about a month before that date. He testified that the tools were in "good working condition" at the time of the theft. Farmer then affirmed the Commonwealth's evidence that he paid $1,733.81 to replace the stolen tools.

At the close of the Commonwealth's evidence, Goldman moved to strike. He argued that the evidence could not establish a *prima facie* case of theft because Chambers authenticated the EVMS video as a recording from January 31, 2019, and the indictment referred to a theft that occurred on October 31, 2019. In response, the Commonwealth asserted that "Mr. Chambers pulled this video and burned this copy for the file, and the video specifically states[,] 'IT Rack Office Entrance 2019/10/31.'" The trial judge considered,

> [T]he Court recognizes there's some confusion regarding the date of the video, but the Court's going to find sufficient foundation was laid for an October 31st, 2019, date. . . .
>
> What I want to do is we'll set it down for a sentencing date, but to the extent the Court may end up finding him not guilty if the Court is not satisfied there's sufficient reference to the date, but I'm going to need to review the transcript for that.

The trial judge continued the case for briefing on whether the video could be tied to October 31, 2019.

At the next hearing, the trial court ruled that "there was some video evidence of the alleged theft[] and the defendant was identified . . . as being the individual in the video." It found "that the surveillance video was reviewed several months later . . . in January of 2020, and that the date of the video was not offered in evidence." Even so, the trial court reasoned, the Commonwealth was not required to prove, as an element of larceny, that the video was recorded on October 31, 2019. The trial court convicted Goldman of grand larceny and sentenced him to a period of incarceration. This appeal followed.

## II. ANALYSIS

The issue before us concerns whether the Commonwealth presented sufficient evidence to establish that Goldman committed the alleged theft, and to establish the value of the stolen property as $500 or more. At the time of the theft, Code § 18.2-95(ii) provided that "[a]ny person who commits . . . simple larceny not from the person of another of goods and chattels of

- 4 -

the value of $500 or more . . . [is] guilty of grand larceny."[6] Larceny is "the wrongful or fraudulent taking of personal goods of some intrinsic value, belonging to another, without his assent, and with the intention to deprive the owner thereof permanently." *Carter v. Commonwealth*, 280 Va. 100, 104-05 (2010) (quoting *Skeeter v. Commonwealth*, 217 Va. 722, 725 (1977)).

At trial, the Commonwealth bears the burden to prove each element of the crime beyond a reasonable doubt. *Kenner v. Commonwealth*, 71 Va. App. 279, 295 (2019). Otherwise, "mere opportunity to commit an offense raises only 'the suspicion that the defendant may have been the guilty agent; and suspicion is never enough to sustain a conviction.'" *Christian v. Commonwealth*, 221 Va. 1078, 1082 (1981) (quoting *Simmons v. Commonwealth*, 208 Va. 778, 783 (1968)).

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "In conducting this review, the Court defers to the trial court's findings of fact unless they are plainly wrong or without evidence to support them." *Green v. Commonwealth*, 72 Va. App. 193, 200 (2020).

### A. The evidence was insufficient to establish Goldman stole Farmer's tools.

Goldman does not dispute that someone stole tools from the EVMS-EVAB construction site on October 31, 2019. Rather, he contends the evidence fails to establish that he is the individual who stole the tools. As evidence of Goldman's criminal agency, the Commonwealth presented (1) a video of Goldman at the EVMS-EVAB construction site putting items from the

---

[6] The current $1,000 threshold went into effect after this alleged crime, on July 1, 2020. *See* 2020 Va. Acts ch. 401.

job box into a bag and (2) Farmer's testimony that tools were taken from the same location on October 31, 2019, and never returned.  Because the parties did not dispute that Goldman had permission to access the tools[7] and the Commonwealth presented no other evidence tying the theft to Goldman, this circumstantial evidence was only sufficient for a conviction if the Commonwealth proved that the EVMS video depicts the theft of October 31, 2019.

Under the applicable standard of review, we regard as true all credible evidence favorable to the Commonwealth and all reasonable inferences drawn from that evidence.  *Id.*  Yet even in the most favorable light, the Commonwealth's evidence fails to establish a connection between Goldman and the theft of Farmer's tools on October 31, 2019.  The EVMS video, which the Commonwealth relies on to establish Goldman's criminal agency and criminal conduct, fails to prove either.

### 1.  The EVMS video as evidence of criminal agency

Generally, the date of a theft is not an essential element of grand larceny.  *See Farhoumand v. Commonwealth*, 288 Va. 338, 351 (2014).  In this case, however, the Commonwealth must prove the date of the theft is the date of the EVMS video because the video represents the single connection between proof of criminal agency and proof of the *corpus delecti*.  The EVMS video is the sole evidence on which the Commonwealth relied to establish that Goldman stole Farmer's tools.  Farmer testified that his tools were taken from the EVMS-EVAB construction site on October 31, 2019.  The EVMS video shows Goldman removing items from a location on the EVMS-EVAB construction site.  If the video is dated October 31, 2019, it tends to show Goldman as the criminal agent and supports a fact finder's conclusion to that end.

---

[7] At oral argument Goldman asserted, and the Commonwealth did not deny, that the parties do not dispute that Goldman had permission to access the tools in the job box.

The Commonwealth argues that the EVMS video proves Goldman stole tools from the job box because "Chambers testified that he was 'requested to pull the footage' from the surveillance cameras from the day of the theft—October 31, 2019." This argument, at best, mischaracterizes Chambers's testimony. As noted at trial, the "sole purpose" of Chambers's testimony was to authenticate the EVMS video. On direct examination, Chambers responded affirmatively when asked whether he was "employed back on January 31[ ] of 2019," after which the following colloquy took place:

> Q. *On that date* did you review an old footage from your job site?
>
> A. I don't know if it was *that day*. I think it was *the following date* that I was requested to pull the footage.

Later in the examination, Chambers again affirmed the date the prosecutor asks of him:

> Q. And you reviewed the video, *and the video date is dated January 31st of 2019*?
>
> A. Yes, sir.

Further, on cross-examination Chambers confirmed that "when [the surveillance video] is recording, it's recording in real time." The only inference fairly drawn from Chambers's testimony is that the video authenticated as "dated January 31st of 2019" was from that date and no other. Indeed, the first reference to a different date came after the close of evidence. In response to Goldman's arguments in support of his motion to strike and in closing, the prosecutor insisted that "[t]he question the Commonwealth asked [Chambers] was, is this the date of offense that happened on October 31[ ], 2019." The record, however, reflects otherwise.

The Commonwealth contends that "Goldman makes much of the fact that Chambers . . . misspoke" and "that Chambers mistakenly mixed up the year is not dispositive" of this case

because the trial court was not required to accept Chambers's testimony.[8]  In support of this position, the Commonwealth analogizes this case to *Commonwealth v. McNeal*, 282 Va. 16 (2011).  That case presented conflicting evidence related to whether a tool was properly returned within its rental window or retained in violation of Code § 18.2-118.  *Id.* at 19.  There, the owner of the rental shop testified that the appellant rented the tool on September 18, 2008, then stopped contact for "a couple of months."  *Id.* at 18.  But on cross-examination, the owner admitted that the tool was returned "in September."  *Id.* at 19.  Upon redirect, the owner testified that the tool was not returned for "two to three months."  *Id.* at 18-19.  Noting that the witness was "obviously confused," the trial court found that the appellant violated Code § 18.2-118.  *Id.* at 19.  The Supreme Court of Virginia affirmed the trial court, reversing a prior decision of this Court.  It held that the trial court had discretion to weigh the evidence and resolve conflicts in a single witness's testimony.  *Id.* at 22.

The *McNeal* holding is inapplicable here for two reasons.  First, there is no conflicting evidence, from his own testimony or otherwise, to suggest that Chambers was mistaken or "obviously confused."  His testimony was clear and unequivocal:  the date of the video was January 31, 2019.  Second, Chambers's testimony on the date of the video was clear and unequivocal because he merely affirmed the information presented to him by the prosecutor.  There is little room for interpretation of a "yes" or "no" response, and therefore no basis for the trial court to conclude mistake or confusion.  Thus, unlike in *McNeal*, in this case there was no

---

[8] In its brief, the Commonwealth again burdened Chambers with the culpability for the substance of Chambers's testimony on the date of the EVMS video, describing that Chambers "erroneously indicated that he retrieved the footage on January 31, 2019 instead of 2020."  But it was the Commonwealth that elicited that unequivocal testimony from its witness, Chambers.

conflict in Chambers's testimony for the trial court to reconcile.[9]  The trial court's finding that

"the surveillance video was reviewed several months later . . . in January of 2020" was

unsupported by the evidence.

The Commonwealth also argues that the date of the EVMS video was in the file name

and therefore constitutes evidence that the video was recorded on October 31, 2019.  It points to

the file name, "EMVS [*sic*] – Inside – IT Rack Office Entrance_20191031_070000.mp4," as

evidence of the video's date.  We find this argument unpersuasive.  The file name was not

offered as evidence, nor did the trial court receive it as such.  Indeed, the trial judge concluded

that "the date of the video was not offered into evidence."  At trial the prosecutor, not a witness,

noted the "file name," and then only as a means of identification of the exhibit:  "For the record,

the Commonwealth is referring to . . . the video entitled 'EVMS Inside.'"  There is no indication

that the Commonwealth intended this statement as evidence, nor could the Commonwealth

properly do so since the statement was made by the prosecutor and not by a witness.  *See, e.g.*,

*Va. Elec. & Power v. Jayne*, 151 Va. 694, 704 (1928) ("[An attorney] has no right to testify in

argument nor to assume that there is evidence which has no existence." (quoting *Atl. Coast*

*Realty Co. v. Robertspn's Ex'r*, 135 Va. 247, 263 (1923))); *Thurpin v. Commonwealth*, 147 Va.

709, 714 (1927) (criticizing as improper questions "more in the nature of testimony" and

"contain[ing] statements of facts not supported by the evidence").

---

[9] We note that in *McNeal*, the witness testified in the Commonwealth's favor during her initial testimony and during redirect.  In contrast, Chambers testified that the video was dated January 31, 2019, and the Commonwealth chose not to redirect or recall him to ask about the October date.  Thus, the trial court did not confront a conflicting account to reconcile.  *See McNeal*, 282 Va. at 22 ("[A] fact finder's evaluations of credibility are not limited to choosing between competing accounts offered by different witnesses but often include, as in this case, resolving conflicts in a single witness['s] testimony, accepting that part of the testimony it deems credible and rejecting the portion it deems incredible." (citations omitted)).

Moreover, the Commonwealth offered no foundation for how the file name was created. Instead, *after* the close of evidence, the Commonwealth argued that "Mr. Chambers pulled this video and burned this copy for the file, and the video specifically states[,] 'IT Rack Office Entrance 2019/10/31.'" This argument contradicted Chambers's testimony, where he stated, "I did not burn [the EVMS video] to a DVD. I exported it directly from our system . . . to a thumb drive and issued that to the project manager on site to be reviewed by anybody that was on site." Now, the Commonwealth points to the full file name, "EMVS [*sic*] – Inside – IT Rack Office Entrance_20191031_070000.mp4," as evidence that the video depicts events from October 31, 2019. Yet Chambers, the witness whose "sole purpose" was to authenticate the EVMS video, did not testify to the name of the file provided to the Commonwealth. Nor did the Commonwealth explain, here or to the trial court, why "20191031" is not a file number, or a typo, or a number entered by a person who had no knowledge of whether the video file depicts October 31, 2019. It is not the place of the trial court, nor this Court on review, to speculate or conjecture about the significance of evidence that was neither offered nor admitted. "Convictions cannot rest upon speculation and conjecture." *Littlejohn v. Commonwealth*, 24 Va. App. 401, 415 (1997).

Since Farmer's tools were purchased in October 2019 and stolen on October 31, 2019, the EVMS video from January 2019 cannot depict the charged theft.

### 2. The EVMS video as evidence of criminal conduct

Even if the trial court were entitled to disregard the only evidence of the video's date, an undated video still cannot prove that Goldman is the individual who wrongfully took the tools. The Commonwealth presented no evidence at trial to prove Goldman lacked authority to be where he was or that he lacked permission to access the tools. The Commonwealth presented no evidence to establish that Goldman took the tools inconsistent with permissive use, or that he

failed to return them. In fact, the Commonwealth did not even show that the tools in the video are the same tools that were stolen. To prove grand larceny, the Commonwealth had to prove that Goldman took tools from the job box that were the alleged stolen tools, and without intending to return them. *See Carter*, 280 Va. at 104-05. This video, without more, simply cannot do that.

Again, no evidence supports the trial court's finding that the video depicted the theft, so this Court does not defer to it. *See Green*, 72 Va. App. at 200. Taking the evidence as presented, the EVMS video shows only that Goldman had access to the job box at least nine months before tools were stolen from the job box. That evidence is insufficient to prove that Goldman stole the tools.

### B. The sufficiency of the evidence to prove the value of the stolen tools

Because the Commonwealth failed to prove that Goldman stole Farmer's tools, we need not reach whether the evidence was sufficient to prove the value of the tools exceeded $500.

### III. CONCLUSION

For the foregoing reasons, we reverse the trial court's judgment, vacate the conviction, and dismiss the indictment.

*Reversed and dismissed.*