COURT OF APPEALS OF VIRGINIA

Present:   Judges Malveaux, Friedman and Senior Judge Petty
Argued at Williamsburg, Virginia

THOMAS MICHAEL DARLING, JR.

MEMORANDUM OPINION* BY
v.       Record No. 1625-24-1        JUDGE FRANK K. FRIEDMAN
SEPTEMBER 16, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF GLOUCESTER COUNTY
Jeffrey W. Shaw, Judge

Charles E. Haden for appellant.

Brooke I. Hettig, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a bench trial, Thomas Michael Darling, Jr. was convicted of statutory burglary,

grand larceny, and peeping into a dwelling in violation of Code §§ 18.2-91, 18.2-95, and

18.2-130, respectively.  On appeal, Darling challenges the sufficiency of the evidence to sustain

his convictions for burglary and grand larceny, arguing that he did not have the requisite intent.

We disagree and affirm his convictions.

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing

party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting

*Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires us to "discard the

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

In May 2023, Darling broke into Raven Cash's residence and storage unit. Cash lived on the top floor of a duplex with her nine-year-old son. Darling, her neighbor, lived on the first floor of the duplex. The duplex contained two storage units, one for each residence. Cash had invited Darling into her home once, in 2020, when he first moved in to the duplex. Otherwise, she never invited him, nor, to her knowledge, had he ever been into her home.

One morning that May, Cash was planning to go fishing, so she entered her storage unit to retrieve some gear and noticed a red velvet bag that she kept in her bedroom closet. Cash had not put the bag in the storage unit. She opened the bag and found that it contained items that "don't typically belong in [the] bag," including her gun and some of her undergarments. She generally stored the gun on the top right-hand shelf in her closet, and she kept the bag in the bottom drawer of her dresser. Cash "never" kept the gun inside the bag.

Cash decided to replace the gun with some other items to give the bag the same heft and then returned the bag to the storage unit. She then went to the store to get security cameras. Cash installed two cameras: one facing her front door and one inside her storage unit. On May 28, 2023, Cash received a notification on her mobile phone that movement was detected on one of the cameras. When she reviewed the video, she saw Darling at her front door.

The following morning, Cash awoke to find a series of new notifications on her phone from the previous night. She checked the recordings and saw Darling at her front door again and then inside her storage unit. Initially, he peered into her residence through a small window on the front door. Then, he tried to open the front door, grabbing the door handle with his hand inside his shirt. Finally, with his hand inside his shirt again, Darling opened the door to the

storage unit, entered, and immediately reached for the bag. He immediately left the storage unit and left Cash's bag there.

Cash then went to the police on the morning of May 29, 2023. Police arrested Darling that evening for burglary, grand larceny, and peeping into a dwelling.[1] At trial, Darling argued there was no evidence that he intended to permanently deprive Cash of her gun because he had essentially just moved it to a different location within her own home. The trial court rejected this argument and convicted Darling of burglary, grand larceny, and peeping.

On appeal, Darling challenges the sufficiency of the evidence to sustain the burglary and grand larceny convictions. He argues, as he did below, that no evidence established that he intended to permanently deprive Cash of her property.

ANALYSIS

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction,

---

[1] Darling was also charged with stalking. The trial court acquitted him of that charge.

'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

If any person breaks and enters a dwelling "with intent to commit larceny, . . . he shall be guilty of statutory burglary[.]" Code § 18.2-91. "Any person who . . . commits simple larceny . . . of any firearm . . . shall be guilty of grand larceny." Code § 18.2-95(A)(iii). Larceny is established by "the wrongful or fraudulent taking of personal goods . . . with the intention to deprive the owner thereof permanently." *Carter v. Commonwealth*, 280 Va. 100, 104-105 (2010).

Darling's convictions for burglary and grand larceny were premised on his intent to steal Cash's firearm, which is the only element he contests on appeal.[2] Our only inquiry is whether any rational trier of fact could have reasonably concluded that Darling intended to permanently deprive Cash of her gun. *See Barney*, 302 Va. at 97.

"In determining intent, 'the factfinder may consider the conduct of the person involved and all the circumstances revealed by the evidence.'" *McEachern v. Commonwealth*, 52 Va. App. 679, 684 (2008) (quoting *Welch v. Commonwealth*, 15 Va. App. 518, 524 (1992)). "[S]pecific intent . . . may, and often must, be inferred from [a] person's conduct and statements." *Id.*

"In Virginia, absent countervailing evidence of an intention otherwise, 'the wrongful taking of the property in itself imports the *animus furandi*." *Id.* at 685 (quoting *Bryant v. Commonwealth*, 248 Va. 179, 183 (1994)); *see also Skeeter v. Commonwealth*, 217 Va. 722, 725

---

[2] Darling concedes that he broke into Cash's home and that the taking and asportation elements of larceny were completed.

(1977) (same). "In other words, the very existence of a trespassory taking permits the inference (unless other circumstances negate it) that the taker intended to steal the property." *McEachern*, 52 Va. App. at 685. "[W]hen an unlawful entry is made into a dwelling of another, the presumption is that the entry was made for an unlawful purpose, and the specific intent with which such entry was made may be inferred from the surrounding facts and circumstances." *Ridley v. Commonwealth*, 219 Va. 834, 837 (1979).

"Common law larceny requires a trespassory taking." *Carter*, 280 Va. at 105. "A trespassory taking is a taking or removal of possession of property from the owner with felonious intent; a violation of an owner's possessory right constitutes a trespassory taking." *Id.* at 106.[3] "One may be said to have taken another's property by trespass though he has not removed it from the other's premises or from his presence." *Id.* (quoting Wayne R. LeFave, *Criminal Law* § 19.2(i), at 979 (5th ed. 2010)). Here, Darling did remove the gun from Cash's residence—but then placed it in her storage unit which was nearby.

Darling's concededly unlawful entry into Cash's residence and asportation of Cash's firearm, without her knowledge or permission, were sufficient to allow the trier of fact to infer that he had the requisite intent. In the video, Darling also turned the doorknobs—to Cash's front door and her storage unit—with his hand inside his shirt as if to conceal his fingerprints. This conduct permitted the factfinder to infer guilty knowledge and an effort to avoid detection.

Further, when Darling returned to the storage unit, after Cash installed video cameras, he grabbed the bag that had contained the gun. Though he did not take the bag, a factfinder could reasonably infer that he was assuring himself that the item was where he had secreted it. Collectively, these facts could reasonably enable a trier of fact to conclude that Darling broke

---

[3] In *Carter*, like here, the defendant argued "that there was no trespassory taking and intent to permanently deprive the store of its [property] because his scheme did not involve the [property] being at any time physically removed from the store." 280 Va. at 105.

into Cash's home, rummaged through her belongings, then placed the items he wanted, including the gun, in the storage unit. His return to check that the item was still there evinced his intent to steal it. Thus, we conclude that here the factfinder was neither plainly wrong or without evidence in finding Darling had the requisite intent to sustain his convictions for grand larceny and statutory burglary.

## CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*